UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY,<br>Plaintiff,<br>v.<br>RANCHO FRESCO MODESTO, INC. and JOHNNY SANCHEZ, an individual,<br>Defendants. | No. 2:24-cv-2897 AC<br><br>ORDER |

Plaintiff filed this action on October 21, 2024, and the parties consented to the undersigned's jurisdiction. ECF Nos. 1, 19, 20, 27, 30, 32. Before the court is plaintiff's motion for summary judgment, ECF No. 49, which is fully briefed. See ECF Nos. 50, 52, 79, 82. For the reasons explained below, the motion is GRANTED.

## I. Overview

### A. The Complaint

Plaintiff Atain Specialty Insurance Company ("Atain") is a Michigan corporation, and defendant Rancho Fresco Modesto, Inc. ("RFM") is a California corporation with its principal place of business in Stanislaus County, California, where defendant Johnny Sanchez also resides. ECF No. 1 at 2. Accordingly, the case comes within this court's diversity jurisdiction. See 28

U.S.C. § 1332.

The complaint asserts, in sum, that Atain issued a Commercial General Liability Policy to RFM for a business venue which RFM falsely represented was a restaurant with less than 30% alcohol sales and not a nightclub. A Supplemental Application listed the hours of operation from 8:00 a.m. to 10:00 p.m., and asserted that dancing would only be allowed once or twice a week. ECF No. 1 at 3; ECF No. 1-2 at 2. Because of these misrepresentations, Atain issued a policy without the Assault and Battery Exclusion that it regularly includes in policies issued to nightclubs and other venues where alcohol sales are more than incidental.

In October 2023, defendant Sanchez and two other individuals who had patronized the venue filed two separate complaints for damages alleging that they had been assaulted by other patrons on the premises.[1] RFM tendered defense of these actions to Atain, and plaintiff agreed to defend RFM while reserving the right to seek reimbursement. Id. at 4-5. It was only after accepting defense of both actions that Atain learned that the subject venue was in fact a "Cantina & Nightclub" which generated more than 30% of its income from alcohol sales. Id. at 3-5. Atain also learned that the incidents underlying the assault actions had occurred after 11:00 p.m. — outside the hours of operation reported by RFM during the application process. Id. at 5.

Based on RFM's alleged misrepresentations, the complaint seeks (1) rescission of the Policy under Cal. Civil Code § 1689(b)(7) and Cal. Ins. Code § 330 et seq. (ECF No. 1 at 8-9); (2) declaratory judgment that Atain has no duty to indemnify Rancho Fresco against the claims in the underlying actions (id. at 9-10); (3) reimbursement from Rancho Fresco of fees and costs expended thus far in those actions (id. at 10-11); and (4) reimbursement from Rancho Fresco of any costs it pays to settle those actions (id. at 11).

B. Procedural History and Motion to Strike Untimely Opposition

Plaintiff filed its motion for summary judgment on June 18, 2026. ECF No. 49. Sanchez filed an opposition on July 2, 2026. ECF No. 50. RFM filed its opposition on July 9, 2026, seven days after the deadline for opposing a motion. ECF No. 52; E.D. Cal. L.R. 230(c). Both

---

[1] Robert Bernal and Alfredo Albor, Jr., were originally named as defendants but have since been dismissed from this action. ECF No. 41.

oppositions included a copy plaintiff's underwriting guidelines ("Manual"), for which a request to seal was granted. ECF Nos. 50-13, 67, 78.

Plaintiff replied to Sanchez's opposition brief on July 13, 2026. ECF No. 79. On July 17, plaintiff applied *ex parte* to strike RFM's opposition as untimely, or alternatively to construe plaintiff's response to Sanchez's opposition as a response to both defendants' oppositions. ECF No. 80. In an abundance of caution, plaintiff also refiled its reply brief as a response to RFM's opposition on July 20. ECF No. 81.

In its response to the *ex parte* application, RFM explains that they inadvertently calculated the due date for their response to the motion for summary judgment based on an outdated version of Fed. R. Civ. P. 56. ECF No. 82 at 1-2. Courts may excuse an untimely filing when based on mistake, inadvertence, surprise or excusable neglect. Fed. R. Civ. P. 60(b)(1). "The determination of whether neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" Lemoge v. United States, 587 F.3d 1188, 1192 (9th Cir. 2009) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd., 507 U.S. 380, 388, 395 (1993)). In determining whether the neglect was excusable, the court considers: "(1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." Bateman v. United States Postal Serv., 231 F.3d 1220, 1223 (9th Cir. 2000) (citing Pioneer, 507 U.S. at 395). These factors are "not an exclusive list," and the court must consider "all relevant circumstances[.]" Briones v. Riviera Hotel & Casino, 116 F.3d 379, 381 (9th Cir. 1997); Pioneer, 507 U.S. at 395.

Here these factors support consideration of the late opposition brief. The filing was untimely by only a week, well before adjudication of the motion, and without any sign that such untimeliness was an act of bad faith. The parties also agree that this opposition substantially mirrors Sanchez's opposition, such that plaintiff effectively filed the same reply brief in response to both. ECF No. 79; ECF No. 80-1 at 3; ECF No. 81; ECF No. 82 at 3-4. Plaintiff is accordingly not prejudiced by consideration of the untimely opposition brief. The motion to strike it is therefore denied.

## II. Standard for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

## III. Undisputed Facts

A complete statement of "undisputed" facts, including each of the parties' positions, is located at ECF Nos. 50-1 and 53.[2] The court has also reviewed, as necessary, the exhibits to the

[2] The two defendants provide identical responses to each of plaintiff's proposed facts, though at times they conflate evidentiary objections with factual disputes. See, e.g., ECF No. 50-1 at 5-6 (objecting to Fact No. 14 in part because it "on this record, is disputed" and the supporting testimony is "self-corrected"). Additionally, defendants occasionally "dispute" an assertion that a proposed fact does not itself make, failing to respect the line between the material fact and the argument the motion seeks to make with it. See, e.g., id. at 9 (not disputing that the Policy contained the quoted disclaimer, but finding the fact "Disputed to the extent [it] implies" that the

complaint and exhibits submitted by all parties in relation to the motion. Unless otherwise specified, the facts set forth below are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.

The subject venue opened in November 2021, with principal Ismail Covarrubias publicly announcing that RFM was "bringing a cantina and nightclub to the 10th Street location" in Modesto. ECF No. 49-16 at 6. Such promotion included both word of mouth and a Facebook page that periodically posted as the "Rancho Fresco Cantina & Nightclub" throughout late 2021 and the first half of 2022. ECF No. 49-7 at 2; ECF No. 49-16 at 4-5; ECF No. 49-23. One of these announcements, dated December 8, 2021, advertised live music at 9:00 p.m. on a Friday night, followed by "DJ spins at midnight." ECF No. 49-23 at 2. In response to a comment on a May 12, 2022, post, the Facebook page owner said "we always have a DJ after 10:30 p.m." ECF No. 49-23 at 6.

On November 23, 2021, RFM submitted insurance applications to two companies other than plaintiff Atain: RT Specialty and Scottish American. Both applications described the venue as follows:

> [A] restaurant that sells burgers, wings, and pizza, as well as mexican food. The customer also has a small amount of night club activity such as live music and dancing on a minimal part of the building, but his main income comes from the food he sells. The customer claims to have less than 30% of alcohol sales.
>
> The prospect has a few restaurants under the same name Rancho Fresco, but this is the only location with minimal night club activity.

ECF Nos. 49-24 at 4, 49-25 at 4.

Mr. Covarrubias had planned from the outset to host comedy shows, live music, mechanical bull riding, and karaoke at the venue. ECF No. 49-16 (Covarrubias Depo.) at 7. The venue's actual closing time would vary, often between 9:30 and 10:30 p.m. Id. at 8. The general understanding was that rather than kicking patrons out at a certain time, the venue would remain

---

disclaimer applies to this case).

open until the last customer left. ECF No. 49-16 at 8-9. As the bar and the restaurant were either both open or both closed at any given time, closing time could therefore be as late as 2:00 a.m. on Friday and Saturday nights, which was the latest that RFM could legally sell alcohol. Id. Covarrubias denied, however, that this had been the plan for the venue when it first opened. Id. at 9.

Data Loss Reports from Markel, Travelers Insurance, and Devon Park show no claims filed against the venue prior to April 2022. ECF No. 50-11 at 4-7. On April 2, 2022, however, patron Carlos Acosta was assaulted by a venue security guard. ECF No. 49-16 at 10. Covarrubias was not present when this incident occurred, but he received a phone call about it the following night. Id. Covarrubias understood that altercations in bars could result in lawsuits, and that was the whole reason he had hired a third party to provide security. Id. at 11-12. Several months later, an arrest warrant was issued for one of the guards involved in this fight. ECF No. 50-20.

On May 24, 2022, RFM submitted its Application for Commercial Insurance to Atain. ECF No. 50-1 at 1. Under the heading "Nature of Business[,]" the venue's operations were described as follows:

> The prospect has a restaurant that sells burgers, wings, and pizza, as well as Mexican food. The customer also has a small amount of dancing activity such as live music and dancing on part of the building. The prospect will have bottle service as well on one side of the business. The customer claims that he will have around 30% of alcohol sales. The business has the same building for its two locations. On one end he has just the normal family style restaurant, and on the other end he has the live entertainment with bottle service. It is not a full night club, but it is a more of a night style restaurant that has live music and bottle service at times.

ECF No. 49-9 at 4; ECF No. 50-1 at 2.

The Commercial General Liability Section further described the venue as:

> Fancy Dining with Alcohol Sales less than 30%, and Restaurant has minimal dancing activity such as live music once a week. They also do bottle service for the business, and have a mechanical bull, but the bull is insured through Zodiac Insurance. The insured is looking for coverage for his restaurant business.

ECF No. 49-9 at 7; ECF No. 50-1 at 3. Similarly, the description in the Property Section read:

> It is a restaurant as well as has basic entertainment property such as basic music material. Restaurant that has live music and small dancing area for people to enjoy the music.

ECF No. 49-9 at 11; ECF No. 50-1 at 3.

The application also included a "Loss History" section asking for "all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the last ___ years." ECF No. 49-9 at 6; ECF No. 50-1 at 2. This section was left completely blank, including the space for quantifying the total monetary value of such loss, the blank for how many years this history covered, and a checkbox indicating there was no loss history to report. Id. Loss reports from three prior carriers did not show any prior losses or claims. ECF No. 50-1 at 3.

The affirmation above the signature line for the application states that the signatory is an authorized representative, that "reasonable inquiry has been made to obtain the answers to questions on this application[,]" and that all answers were "true, correct and complete to the best of his/her knowledge." ECF No. 49-9 at 6; ECF No. 50-1 at 3.

On May 27, 2022, Atain's Managing General Agent, Burns & Wilcox, issued a quote for commercial general liability coverage to RFM. ECF No. 50-1 at 3. The quote was based on the assignment of Class Code 16910, or "Restaurants—Sale of Alcoholic Beverages less than 30% of the annual receipts of the restaurant —with table service[.]" ECF No. 49-12 at 2. The quoted rate was subject to, inter alia, "[s]atisfactory inspection within 30 days of binding[.]" ECF No. 49-12 at 3.

Former Burns & Wilcox underwriter Rene Gloudeman testified on deposition that Atain insurance policies usually exclude coverage for assault and battery, but that such coverage can be restored at no cost if gross receipts from alcohol sales are less than 30% of total revenue. ECF No. 49-13 at 7-8; ECF No. 50-1 at 4. Assault and battery coverage was included in the policy for the RFM venue only because this requirement was met. Id. Atain's Vice President of Underwriting and its Manager of Underwriting both testified that such coverage can be offered even if gross receipts from alcohol sales are up to 50% of total revenue. ECF No. 50-1 at 5; ECF No. 50-15 at 30; ECF No. 50-16 at 12. This matches the threshold listed in Atain's Manual for

removing the Assault and Battery Exclusion from policies issued to businesses falling under the "Restaurant" class. ECF No. 67 at 63-64. However, the Manual also categorically prohibits removing this exclusion from policies for "Bars and Taverns[,]" "Nightclubs[,]" and "[a]ny risk with an Assault and Battery claim or incident[.]" Id.; see also ECF No. 50-15 (Suda Depo.) at 40 (testimony of Atain Vice President of Underwriting that the exclusion cannot be omitted for a bar or tavern).

On June 2, 2022, RFM submitted the supplemental Bars and Taverns/Restaurants/Night Clubs Application. ECF No. 49-17; ECF No. 50-1 at 6. When asked to describe the venue's business, RFM checked the boxes for "Bar/Tavern[,]" "Restaurant[,]" and "Nightclub[.]" ECF No. 49-17 at 2. Covarrubias testified that this was because RFM did not want to "leave anything out for insurance purposes." ECF No. 50-17 (Covarrubias Depo.) at 24. The supplemental application also acknowledged that the venue had a 500-square-foot dance floor, to be used once or twice per week. ECF No. 49-17 at 3. RFM did not answer the question on the supplemental application that asked for the latest hour of operation. ECF No. 49-17 at 2. The underwriter would have confirmed the closing time via inspection. ECF No. 49-13 (Gloudeman Depo.) at 12.

RFM's agent verbally told Gloudeman that the venue was in fact a restaurant that closed before 10:00 p.m., which a nightclub would not do. Id. at 10-11. RFM had also described the venue in other parts of the application as a restaurant where alcohol accounted for only 30% of all food receipts, which was more consistent with a restaurant than a bar. ECF No. Id. at 11. Atain relied on these representations in deciding to treat the venue as a restaurant for which assault and battery coverage was acceptable, even if the restaurant included a small bar. Id. at 10-11.

Plaintiff issued the Policy for the period between June 6, 2022, and June 6, 2023. ECF No. 49-19. The cover page listed the Business Description as "Restaurant and Bar[,]" but the supplemental declaration classified the business as "Restaurant[] - Sale of Alcoholic Beverages less than 30% of the annual receipts of the restaurant - with table service[.]" Id. at 2, 16. Endorsement AF-33509 removed the Assault and Battery Exclusion from the Policy. Id. at 27, 37. Endorsement AF-3380 warned RFM that any falsehoods or misleading information in the insurance application could lead to denial of coverage or void the Policy, which would also

relieve Atain of any duty to indemnify or defend. Id. at 8.

Burns & Wilcox submitted a Request for Inspection on June 9, 2022. ECF No. 50-1 at 10. Pacific Inspections, Inc. ("Pacific") accordingly inspected the premises on July 19, 2022, during which it interviewed Covarrubias. Id. Covarrubias confirmed that the venue was a "restaurant/bar" open from 8:00 a.m. to 10:00 p.m. daily, and that live music was played on its stage from 11:00 a.m. through 10:00 p.m. on Fridays and Saturdays. ECF No. 49-4 at 3. These hours were reflected in Pacific's inspection report. ECF No. 49-18 at 3-4. Based on these responses and the fact that alcohol sales accounted for less than 30% of gross receipts, plaintiff believed that the venue's risk level was more akin to that of a family restaurant than a bar. ECF No. 49-13 (Gloudeman Depo.) at 3-4. This classification was also consistent with RFM's representations in its insurance application that the venue was a family friendly "night-style restaurant" with "a little live music and a small dance floor" that closes at 10:00 p.m. Id. at 5-6. Having dancing and music at a restaurant is pretty common, and Burns & Wilcox determined that the risk posed by these features was acceptable. Id.; see also ECF No. 49-14 (Suda Depo.) at 5 (affirming that she would approve an insurance policy with the waiver based on the documents submitted with RMF's application, because the venue was purportedly "a restaurant with 30 percent sales").

Sanchez filed his assault action on October 20, 2023, against RFM, which then tendered defense of this action to plaintiff in November 2023.[3] ECF No. 50-1 at 13. Plaintiff agreed to defend RFM, and it retained defense counsel on December 18, 2023. Id.; ECF No. 49-5 at 2. Counsel then emailed RFM a Reservation of Rights letter on December 29, in which Atain reserved "the right to continue to investigate the coverage issues presented by this matter and to dispute coverage."[4] ECF No. 49-27 at 13.

---

[3] Although the parties dispute the precise date of the tender (ECF No. 50-1 at 13), that dispute is not material.

[4] In disputing this assertion, defendants cite the prior page's reservation of rights to (1) decline coverage for physical-sexual abuse, (2) decline "liquor liability" based on bodily injury caused by RFM contributing to the intoxication of any individual, and (3) enforce the Policy's Anti-Stacking provision to avoid liability under both Coverage A and Coverage B. ECF Nos. 49-27 at 12, 50-1 at 13, 50-21 at 13. The following section, however, begins with "Atain reserves its right

Plaintiff asserts that it was only after sending the Reservation of Rights that Atain discovered RFM "had expanded its restaurant operations to include a nightclub" in November 2021. ECF No. 50-1 at 13. On July 30, 2024, plaintiff sent a letter asserting that RFM had made "material misrepresentations" in the venue's insurance application. ECF No. 49-28 at 3. Specifically, the application had stated the Venue was not a nightclub, and the supplemental application had listed the hours of operation as from 8:00 a.m. to 10:00 p.m. daily. Id. Instead, the Venue was run as a Cantina and Nightclub open as late as 2:00 a.m. on Fridays and Saturdays, with the injury underlying the Sanchez action occurring early Sunday morning during these additional hours. Id. at 4. The letter noted that California Insurance Code §§ 331 and 332 gives Atain the right to rescind and void the Policy based on material misrepresentations or omissions, even when based on negligence or innocence on the applicant's part. Id. at 4-5 (citing Barrera v. State Farm Mut. Auto. Ins. Co., 71 Cal.2d 659, 665 (1969); Philadelphia Indem. Ins. Co. v. Montes-Harris, 40 Cal.4th 151, 157 (2006)). Atain further reserved the right to seek reimbursement of any defense fees, settlement costs, or judgment in the Sanchez action. Id. at 5.

It was only in preparing to depose Covarrubias in this action that plaintiff also learned about the April 2022 incident between Carlos Acosta and venue security. ECF No. 49-6 at 4. The Manual explicitly warns Atain employees that even if the Assault and Battery Exclusion is not mandatory for a particular class of business, "[d]o not remove the exclusion for a risk with a previous History of Assault and/or Battery Claims or incidents[.]" ECF No. 67 at 64.

## IV. Analysis

In order to rescind an insurance policy based on misrepresentation, the insurer must demonstrate that (1) the policyholder misrepresented or concealed information known to it and requested in the insurance application, (2) the information was material to the decision to issue the policy, and (3) the policy would have either not been issued at all or issued with materially different terms if the policyholder had disclosed that information. ECF No. 49-1 at 13; ECF No.

---

to raise *other* coverage issues if and when they become apparent." ECF No. 49-27 at 13 (emphasis added). The letter therefore did not disclaim Atain's right to enforce other Policy limitations, including the right to rescind the Policy if Atain discovered fraud.

52 at 12; Imperial Cas. & Indem. Co v. Sogomonian, 198 Cal.App.3d 169, 181 (1988). Plaintiff bases its right to rescind the Policy on misrepresentations regarding two independent matters. First, RFM allegedly led plaintiff to classify the venue as a Restaurant rather than a Nightclub or Bar/Tavern through a series of misrepresentations, including about the venue's business hours and the contribution share of alcohol sales to total revenue. ECF No. 49-1 at 14. Second, RFM did not disclose the prior incident between Acosta and venue security despite being asked in the application about "occurrences that may give rise to claims." Id. at 15-18. The court finds that summary judgment is warranted on the second ground asserted by plaintiff.

A. Designation of the Venue

It is undisputed that Atain waived its standard Assault and Battery Exclusion because of its conclusion that the venue was appropriately classified as restaurant rather than a nightclub. Atain's Manual permits the omission of the Assault and Battery Exclusion for restaurants which meet specific requirements, but requires its inclusion without exception for Nightclubs, Bars, or Taverns. ECF No. 67 at 63-64. The ultimate question is whether Atain's classification decision was based on misrepresentations and/or material nondisclosures by RFM. The question on summary judgment is whether the undisputed evidence supports judgment in plaintiff's favor, or whether there is a material factual dispute requiring resolution by a jury.

Drawing all inferences in favor of defendant as it must, the court finds that the question whether RFM misrepresented the nature of its business presents triable factual disputes. RFM never affirmatively represented that the business was only or unambiguously a food service establishment, or denied that live music, dancing, and bottle service were part of the venue's offerings. The May 2022 application disclosed these aspects of the business,[5] and the June 2022 supplemental application checked the boxes for "Bar/Tavern[]" and "Nightclub" as well as "Restaurant[.]"[6] However, RFM also consistently downplayed the role of music, dancing, and alcohol sales and emphasized the venue's primary function as a restaurant. Id. (noting "small amount of dancing" and "bottle service at times," and denying that venue operated as "a full night

[5] See ECF No. 49-9 at 4; ECF No. 50-1 at 2.
[6] ECF No. 49-17 at 2; ECF No. 50-17 at 24.

club"); ECF No. 49-9 at 7; ECF No. 50-1 at 3 (describing venue as restaurant with "minimal dancing activity"); ECF No. 49-9 at 11; ECF No. 50-1 at 3 (describing venue as "Restaurant that has live music and small dancing area for people to enjoy the music."). The business was described overall as "Fancy Dining with Alcohol Sales less than 30%." ECF No. 49-9 at 7; ECF No. 50-1 at 3.

RFM's denial that the venue was a "full nightclub," and its related representation that dancing activity was "minimal," are blatantly inconsistent with its Facebook posts over a six-month period extending through the submission date of the application. Those posts identified the business as a "Cantina & Nightclub" and promoted live music and/or DJs and dancing on weeknights as well as on weekends, continuing after 10:30 p.m.[7] However, plaintiff does not identify direct evidence of the event schedule which was in effect after Memorial Day weekend of 2022. Because the coverage period began after that time, this matters. Covarrubias told the underwriter's inspector in July 2022 that live music played only on Friday and Saturday nights, ECF No. 49-4 at 3, and while there is reason to doubt the accuracy of this statement plaintiff points to no direct evidence that it was untrue at the time the statement was made. While the Facebook posts could support an inference in plaintiff's favor on this point, they do not compel one as matter of law.

As to the alleged misrepresentation that only 30% of the venue's gross receipts are from alcohol sales,[8] arguably the most significant factor to a holistic risk assessment, plaintiff has not identified evidence of RFM's actual gross receipts and total alcohol sales to demonstrate that this

[7] A post by Rancho Fresco Cantina & Nightclub dated December 8, 2021, advertised a live band starting at 9:00 p.m. on a Friday night, with a DJ starting at midnight. The post also mentioned dance lessons on Wednesday nights, followed by a DJ until midnight. ECF No. 49-23 at 2. A post dated February 26, 2022, reported a sold-out, 200-seat live music show on a Tuesday night. Id. at 4. A post dated April 14, 2022, advertised line dancing on a Thursday night with a DJ "all night." Id. at 5. A post dated May 12, 2022, advertised a live band starting at 8:30 on a Friday night, and stated "we always have a DJ after 10:30." Id. at 6. On May 26, 2022, two days after submission of its initial application to Atain, RFM posted about an upcoming weekend of events including music and dancing on Thursday, Friday, Saturday and Sunday nights. Id. at 7.

[8] The parties dispute the significance of evidence that Atain permitted, in some cases, omission of the Assault and Battery Exclusion for restaurants with receipts from alcohol of up to 50% of all sales. Because the record lacks evidence of defendant's actual alcohol sales, the court need not address this issue.

representation was inaccurate.

And as for the alleged misrepresentation of business hours, the evidence is equivocal. Although RFM's written applications did not specify business hours, the underwriter and the premises inspector were told that the venue was open from 8:00 a.m. to 10:00 p.m. daily. ECF No. 49-4 at 3; ECF No. 49-13 at 10-11. The Facebook posts advertising later hours all predate these representations, and thus support plaintiff's position but do not preclude the existence of a factual dispute. Plaintiff has identified evidence that the venue has subsequently been open after 10:00, including on the night of the Sanchez assault, which similarly supports but does not compel an inference of misrepresentation. Covarrubias's deposition testimony is itself inconsistent and subject to competing interpretations. He testified that the precise closing time varied between 9:30 and 10:30 p.m. in 2022, ECF No. 49-16 at 8, and also that the venue generally remained open until the last customer left—which could be as late as 2:00 a.m. on Friday and Saturday nights. Id. at 8-9. However, the frequency with which the establishment remained open late is unclear, as is the volume of alcohol sales after 10:00 p.m. In any event, a proprietor's intent to stay open until the last customer has left is not necessarily inconsistent with reporting official business hours of 8:00 a.m. to 10:00 p.m. daily.[9] Accordingly, the question of a misrepresentation as to business hours is properly one for a jury.

The court also notes that defendant Sanchez has raised a "waiver by inspection" theory, see ECF No. 50 at 17-19, which also depends on facts which are disputed, undeveloped, and/or subject to competing inferences. Whether plaintiff was on notice of the matters it now claims were misrepresented—for example, by observing on inspection that the venue had almost three times as many bar seats as dining seats[10]—and was therefore not actually misled, or has forfeited its claim for recission, also turns on triable issues of fact. Accordingly, even if plaintiff has met its burden on summary judgment as to misrepresentations in its written application, there would

[9] It is not uncommon for restaurants, bars, and nightclubs to allow patrons already present to remain on the premises after the doors close for the night, as Covarrubias said was the case here. Such an informal policy does not necessarily contradict posted business hours, which are often interpreted as the hours between which patrons may enter. Whether there was a misrepresentation here is a disputed factual question.

[10] See ECF No. 49-18 (inspection report) at 5.

remain a triable issue on the ultimate question of its reliance on the misrepresentations, i.e. materiality.

For all these reasons, summary judgment is not appropriate on the question of material misrepresentations related to the classification of the venue as a restaurant rather than a nightclub.

B. Prior Incidents

It is well established that "the existence of circumstances that can lead to litigation" is generally material to an insurer's decision to issue a liability policy. Jaunich v. National Fire Union Ins. Co., 647 F. Supp. 209, 211 (N. D. Cal. 1986). This is particularly so when the insurance application specifically asks about such incidents. Id. (citing Thompson, 9 Cal.3d at 916)). In this case, Atain's Manual specifically prohibited the omission of the Assault and Battery Exclusion for any venue with a prior assault or battery claim or incident. ECF No. 67 at 63-64. The application specifically asked RFM for a list of "all claims or losses (regardless of fault and whether or not insured) or *occurrences that may give rise to claims* for the last ___ years." ECF No. 49-9 at 6 (emphasis added).

Plaintiff argues that the failure to disclose the April 2022 assault of a patron constitutes a material misrepresentation. ECF No. 49-1 at 15. Defendants contend that the non-disclosure was not a misrepresentation because no claim, lawsuit, arrest, or charge arising from Acosta's assault had been filed at the time of RFM's insurance application. ECF No. 52 at 17. Police did not issue an arrest warrant until October 2022, three months after Pacific's inspection of the venue. Id.; ECF No. 50-20. However, the application did not merely ask for information about claims, lawsuits, arrests, or criminal charges. It also asked for "*occurrences* that may give rise to claims." An assault on the premises indisputably constitutes an occurrence that may give rise to a claim. The Acosta assault presented a specific and identifiable basis for a potential claim: the nature of the incident, the identities of the injured party and the party who caused the injury, and the date, time and location of the incident, were all known. The duty to disclose does not turn on RFM's ability to identify specific causes of action or theories of its liability that might be supported by the facts of the incident; it was required to disclose *occurrences* that might give rise

to any claim, meritorious or not.[11] The court accordingly rejects defendants' argument that there is a jury question as to whether the assault constituted an incident that could give rise to a claim.

Defendants also argue that plaintiff has provided insufficient proof of materiality to support summary judgment on this issue. The court disagrees. Alexandra Music, plaintiff's Manager for Underwriting, declares that the Assault and Battery Exclusion would not have been removed from the Policy if RFM had disclosed the incident. ECF No. 49-4 at 3. Defendants object to Music's declaration under Fed. R. Evid. 602 and 701 on the basis that she had no personal role in underwriting or issuing the Policy at hand. ECF No. 50 at 3; ECF No. 50-1 at 19. This objection is overruled. Testimony is permitted from witnesses who have "personal knowledge of the matter" about which they testify, provided such testimony is "rationally based on the witness's perception[.]" Fed. R. Evid. 602, 701(a); see also Fed. R. Civ. P. 56(c)(4) (requiring that declarations "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Music has personal knowledge of plaintiff's underwriting guidelines and its process for determining when the Assault and Battery Exclusion can and cannot be omitted from a policy. ECF No. 49-4 at 1. That is the subject of her declaration. Moreover, the Manual itself states unambiguously that the Assault and Battery Exclusion should not be removed for any business with prior assault and/or battery claims *or incidents*. ECF No. 67 at 63-64. This mandatory language establishes materiality even without reference to the Music declaration.

In sum, the court finds as a matter of law based on the undisputed facts that the Acosta assault constituted "an occurrence that may give rise to a claim," such that its disclosure was required. It is indisputable that RFM did not disclose the incident, which occurred less than two

[11] Defendants suggest that the fact the assault was perpetrated by plaintiff's own security guard undercuts the theory that the incident may have given rise to a claim against the venue. ECF No. 52 at 17-18. This argument is somewhat baffling, as RFM's employment of the tortfeasor would seem to increase rather decrease its risk of liability. In any event, neither the precise character of the incident nor considerations of fault are relevant to the duty to disclose. When a patron is assaulted, any premises owner or operator should anticipate the possibility of a claim—as Covarrubias well understood, for he had hired security specifically because he recognized that altercations could result in lawsuits. ECF No. 49-16 at 10-12.

months before its initial application was submitted to plaintiff. And defendants have identified no evidence which creates a genuine factual dispute about whether plaintiff would have issued the policy without an Assault and Battery Exclusion had it known about the Acosta assault. RFM's intent regarding its non-disclosure is immaterial. See Cal. Ins. Code § 331; Thompson, 9 Cal.3d at 916. Accordingly, any dispute or lack of clarity about Covarrubius's knowledge or understanding—or that of any other person associated with RFM or responsible for its application—cannot defeat summary judgment. For these reasons, plaintiff is entitled to summary judgment on its claim for recission on grounds that it failed to disclose "occurrences that may give rise to claims."

## V. Conclusion

For the reasons explained above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 49) is GRANTED IN PART, on grounds that RFM failed to disclose a prior assault on the premises;
2. Policy No. BWPF0074093 is hereby declared null and void *ab initio*;
3. Plaintiff has no duty, and never has had a duty, to defend or indemnify Rancho Fresco Modesto, Inc. against the lawsuit filed by Johnny Sanchez, or to indemnify any judgment that Sanchez may obtain against Rancho Fresco and seek to enforce against Atain under Cal. Insurance Code section 11580(b);
4. Plaintiff may recover any defense fees and costs incurred thus far in providing Rancho Fresco Modesto, Inc., with a defense to such action; and
5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED: November 3, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE